I believe our next case is Sleeth v. Commissioner of Internal Revenue. Council, I hope you will tell me how to pronounce your name before I ask you to speak because I'm starting to embarrass myself if I try it on my own. Good morning. My name is Madeline DeMell. Thank you, Ms. DeMell. We are ready for your argument. May it please the court. Madeline DeMell on behalf of taxpayer appellant Ms. Lori Sleeth. Ms. Sleeth seeks innocent spouse relief from the tax liability that stems exclusively from her ex-husband's income during the years at issue. When the tax court denied Ms. Sleeth relief under IRC section 6015f, it committed three errors that independently and certainly cumulatively constitute an abuse of discretion. First, the tax court incorrectly evaluated the economic hardship factor. This factor should favor relief. Second, the tax court also incorrectly analyzed the knowledge factor. This too should favor relief. And third, the tax court's inaccurate determination of these two factors infected its overall balancing conclusion, which ultimately came out wrong. For these reasons, this court should reverse and grant Ms. Sleeth's request for relief. Turning first to the economic hardship factor, there are three points that support the contention that this factor should favor relief. But before you get into that, counsel, let me ask you this. She testified. Did she? I don't believe she testified as to how much of the $26,000 boat insurance proceeds are the $61,000 lump sum divorce settlement she had left. That's correct, your honor. The record doesn't indicate an exact number of what remains from either of those funds. And she didn't indicate that she'd attempted to get a job working more hours and paying more money than the one she had, the part-time job just a few hours a week, did she? Your honor, when the taxpayer in this case began the job that's reflected in the record, it was the first time she had worked in her adult life. That's not what I'm asking you. Did she testify, I've tried to get a better paying job or a job with 40 hours a week, but I've been unable to do so. The record doesn't indicate about whether or not there were additional job seeking efforts made by the- No, but counsel, question. That means, does it not, that she didn't testify. She had the opportunity. She was on the stand. She was being direct examined by an attorney. And she had the burden of showing economic hardship, does she not? That's correct, your honor. She has that burden. And she voluntarily or her counsel for her voluntarily elected not to put those facts into the record. Isn't that true? That's correct, your honor. So she failed to carry her burden when she had the opportunity to do so, if the facts would have justified it, correct? Your honor, I believe that the appellant in this case carried her burden to the extent that she was able given her job circumstances at the time of trial. I don't know that the- I thought that she was able at the time of trial to testify to the facts about how much of the lump sum divorce settlement she had left, how much of the boat insurance proceeds she had left, and about all the efforts she had made to get a higher paying, better hours job. She had that opportunity and she didn't do it, did she? Your honor, the record on economic hardship is certainly more sparse perhaps than on other factors, but even on- And who does that cut against? If there's no evidence in the issue or inadequate evidence? Two points on that, your honor. No, no, I'm not asking for points. I'm asking you if one party has the burden and there's no evidence or insufficient evidence to determine that factor, who loses on that factor? The individual with the burden would lose on that factor. And that's the taxpayer in this case, right? I believe so. In this case, the taxpayer has the burden, but I do believe that what the taxpayer did introduce into the record is sufficient to support a finding of economic hardship, though it could have been supplemented further given the income- Suppose she had had $86,000 left from the lump sum divorce or payment and from the boat insurance proceeds. That would have been a very relevant factor cutting against her case, would it not? Your honor, the assets that are left do cut against the taxpayer's case to the extent they're accessible for use against the liability at issue. But even with the assets aside, it's clear that taxpayer's income supports a finding of economic hardship under the relevant federal poverty guidelines, which the controlling revenue procedure instructs should be used to evaluate the case of economic hardship. Is it enough for someone to get a job for a few hours a week? And does that automatically say, well, my income is low. So no matter what this tax liability is, it's an economic hardship. Your honor, I think what's really important here is that the controlling court should pay special attention to the facts and circumstances of each case. And while this taxpayer's job is only part-time, I think the facts and circumstances that are important here is that it is the first time this taxpayer has worked in her adult life. She lacks a college degree. And so while at the time of trial, this may have not been the best job possible to start making good on the liability at issue, it is a start, particularly for someone in her circumstances. And it's against that backdrop that her request that the tax court find economic hardship should be evaluated. Are you aware of any cases where a circuit court has reversed a determination of this sort? Your honor, there are some cases, I believe, prior to 1998 when circuit courts reversed tax court determinations of innocent spouse relief, but that was prior to the 1998 amendment of this statute. In other tax-related cases, not on innocent spouse matters, circuit courts have found an abuse of discretion. I believe a Third Circuit Gregory case from this last year. So while the tax court does enjoy substantial discretion in matters like this, that discretion really must be bounded by certain guardrails. And that's really where Ms. Leith argues the tax court went wrong in this case. So accepting that there was even some error in the determinations of economic hardship and knowledge, it is logically necessary that those errors carried over into the tax court's final balancing act and were compounded. It means that the tax court, when it balanced all of the factors, wasn't working with the correct array of factors. And that compounding of errors is really where Ms. Leith argues the abuse of discretion comes from. We've discussed economic hardship a little bit. So turning to knowledge, there are also a number of points why this factor should favor relief as opposed to disfavoring relief as the tax court found. For instance, the tax court incorrectly blamed Ms. Leith for cooperating with Dr. Leith's failure to pay. This is wrong because Ms. Leith lacked knowledge that he would fail to pay. And even if the tax court was correct to impute knowledge, it certainly exaggerated the strength of any knowledge that Ms. Leith had. When the tax court balanced the factors, it transported those mistakes from the individual factor determination into its ultimate balancing inquiry, again, compounding those mistakes. A few examples of the ways in which the tax court erred when making its knowledge determinations is the fact that the record demonstrate that Ms. Leith admitted to evasiveness on the record. He admitted on record that he would have lied to his then-wife had she asked about his ability to pay the liability at issue. So it's really different. Of course, the tax court was the the witnesses testify, observe their demeanor, and could find them credible or not credible as it chose to do so, right? That's correct, Your Honor. The tax court was. We also have decisions, one called U.S. versus 242-484 in currency in which we said that when a court, in that case a district court, reaches a conclusion that under the law depends on certain fact findings and the court doesn't explicitly make the fact findings far against that position, we infer that it made any and all necessary fact findings to support the conclusion it reached. So why shouldn't we infer in this case that the tax court found that his testimony wasn't credible? Your Honor, I think even if you infer that the tax court found that testimony was not credible, there are enough question marks and red flags around the discrepancies in the record on economic hardship and knowledge to trust that those mistakes could have carried over to the ultimate balancing task. And I think it's, again, that transportation and compounding of errors that really pushes this case over the line to an abuse of discretion. I think you're correct, it could be the case that some of the mistakes or errors that Ms. Sleeth argues for on the independent determinations of the economic hardship and knowledge factors may not be enough to cross that abuse of discretion threshold, but combined with their impact in the ultimate balancing determination, that's really when the tax court went beyond its discretion because those errors compromised the integrity of its balancing process and under the controlling revenue procedures. And without a fair balancing, it's really impossible to evaluate whether the tax court followed the revenue procedure guidance that it purported to use in this case when it determined Ms. Sleeth's request for relief. And those are the sort of guardrails that this court should help provide to the tax court when it makes these balancing determinations. It shouldn't be the case that the tax court can purport to use these controlling revenue procedures, but then do so incorrectly or with an incorrect or inappropriately determined array of factors. That is something that should constrain the discretion of the tax court and the type of conclusion that this court can make in order to provide, excuse me, provide guidelines for the tax court when it makes these determinations. You said at the beginning that this is all tax liability from her husband's income. Is that an appropriate factor you think for the tax courts of Wade? It's part of the facts and circumstances of this case, your honor. Had Ms. Sleeth and her ex-husband elected to file separately, she would have had no filing obligation herself as she earned no income during those years at issue. But because they filed jointly, this liability attaches to her. Don't worry that you're over the time. You're on what we call my time now. Doesn't it mitigate that fact that she certainly, it appears, enjoyed the benefits of that income throughout those years? Your honor, as to any benefit the taxpayer enjoyed, that's taken care of in the significant benefit factor of the balancing test. And in this case, the tax court found that that factor weighed in favor of relief. So that shouldn't be anything that cuts against Ms. Sleeth here. Thank you. You have your time. Ms. Wong for the appellee. Good morning. Cheryl Wong for the IRS. I may please the court. Ms. Sleeth wants to ask this question. She wants to be treated differently from the vast majority of taxpayers who signed a joint return on the basis of a thin record in the case where she had a burden of proof and the IRS had none. At the time she signed the tax return in March, 2011, she knowingly took on several hundred thousand dollars of debt without asking how it was going to be paid. She knew that two of those three returns were late. She knew that she and her husband had chronic underpayment problems at the payment at the time of filing. And that's where the last several years before the years at issue, between $70,000 and $90,000 unpaid. She knew that for at least one of those years, they had trouble paying such that they had to enter into an installment agreement. They knew that at the time that they had had no luck selling their house and that was money tied up in the house that they couldn't have used to pay the taxes at the time. She also knew that her husband was paying for two households, a plane and a boat. All the time she had unrestricted access to at least two joint bank accounts that she could have checked balances for seeing that they hadn't had a couple of hundred thousand dollars and followed up with her husband. How were we going to pay these taxes? And these were facts that prompted her to ask some questions. The record does not support the contention that Dr. Sleeth was evasive or he deceived her. All he said on the record was, I didn't tell her. She didn't ask and he didn't tell. And this is very different from the situation, for example, in the Neal case from this court, in which there were multiple instances of affirmative lying. They kept separate bank accounts and when the wife asked her husband about his finances, he refused to tell her. Or the Nizer case from the tax court, where again separate finances and the husband instructed his accountant to specifically not tell his wife about his finances. She also had three years of college, although she didn't get a household bills that they were still apparently somewhat sharing. And you don't put someone in charge of paying all the bills if you didn't think that they could do it. Let's say if the if the tax court's economic hardship determination was incorrect, that mean that it was an abuse of discretion or do the factors still weigh out such as the tax court's was appropriate? Well, it's definitely possible to affirm in on the basis of one single factor, especially the knowledge factor as the Seventh Circuit recently did in Jacobson. And even if, and first of all, the economic hardship factor, the the tax court was also correct in saying that it was neutral. I just want to make sure that I answered your question. Okay, thank you. So the tax court determined that the factor was neutral. And in anybody's economic situation, there is what you have. And then there's what your expenses are. We have one half of that picture, which is at least $100,000 in equity in her condo, her 51,000 from a divorce and 26,000 in her boat insurance proceeds. The other half is completely missing. And for that reason alone, the tax court was not wrong to designate that economic hardship factor as neutral. And in Neil, again, near the end of that opinion, the majority opinion, the text, this court did say an incomplete picture of the taxpayers expenses cuts against relief. And all we're left with are speculative arguments, that the argument that she can't get a loan, the argument that she can't rent, but there's nothing in the record, we don't know that. And that is especially true when it comes to real estate, whether you can get a loan from your house, because it's often very local and very individual. And since this is equitable relief, we also want to take note of the fact that the assets that Ms. Lee has were paid for by her that we can no longer collect from him. And so this is also a distinguishing fact from the Wilson and Ewing cases that the appellant cited in their brief, in which the taxpayers apparently were paying for the houses they were allowed to keep while their husbands were not working at the time. And the last point I want to make on this economic hardship factor is that in innocent spouse proceeding, this is not the end of the road necessarily for Ms. Lee. From her perspective, she wants to be completely let off the hook. From our perspective, it's simply keeping a potential source of collection open. And if at some point in the future, the IRS wants to consider levying or evicting, Ms. Lee will be able to take advantage of separate legal processes in which she again present a perhaps more complete financial picture to the IRS and the tax court and possibly this court. Counsel, could you expound on that a little bit? Suppose we affirm this judgment, what's the IRS's next step to collect from her? Well, that would be up to the IRS's discretion. There are a couple of possibilities. The IRS may possibly decide to put her in currently uncollectible status to people that they do consider currently uncollectible until they get a job or their income increases. It can decide to levy on her principal residence and that requires a court procedure. Ms. Lee herself can also offer an offering compromise to pay a part of the income that she has. And again, before that can happen, there will be an administrative process and possibly a judicial process as well that is subject to judicial review. What's to keep the IRS from going through the court and putting her out on the side of the road? Well, it would have to evaluate whether it makes sense to, well, you're saying that she could depend on the tender mercies of the IRS. Is that your position? It is also subjected to judicial review. So, what are the restraints on the exercise of that power? Subject to judicial review doesn't tell me what the standards are and what the IRS has to show and how she can defend against it. I do not know those factors offhand, but they are statutory starting from section 6331 of the code, but I do not know the statute firsthand off the top of my head. Okay. So, as far as the weighing of the factors, there is no appellate case that we know of in which an appellate court reversed the tax court's decision on a 6015-F decision because it might have weighed the tax factors differently. And the cases that we have on that go rather the other way. Again, Jacobson from the Seventh Circuit and Greer from the Sixth Circuit, they both said that, well, even though we might have decided differently, we are not a court of first instance. And of course, this is abuse of discretion review, which is highly differential. And in Jacobson, the Seventh Circuit said, as long as the tax court weighed all the facts and circumstances, it would not have abuse at its discretion. And here, in addition to the knowledge factor, we have the legal obligation factor, the economic hardship factor that are both neutral, meaning they don't abuse its discretion. And so, we are asking this court to affirm on established principles, which is the differential standard of review and the burden of proof, which in this case, Ms. Spieth did not meet. Thank you. Thank you. Mel, you've got your rebuttal time. Thank you, Your Honor. I think there are two points I'd like to start with. First, on the burden issue and its interaction with the standard of review, I think it's important to recognize that even if the independent determinations of the knowledge and economic hardship factors are not alone enough to justify a reversal under the standard of review, the extent to which possible mistakes there could have affected the overall balancing process might be enough to justify a remand for further fact-finding and development of a more complete record. I think there's enough in this record to suggest the possibility of mistakes in the independent determination of those two factors. And again, given— Isn't the fact, though, that your client had the burden to put those facts in the record, why would we need to remand to give her another bite of the apple? It seems that she already had a chance to put forward whatever she thought would meet that burden. That's correct, Your Honor. She did have that chance in the first instance. And here, I think reason why a remand could be justified is that any mistakes there in the tax court's determination on those two independent factors, that carried over and caused additional mistakes in the balancing act itself. That balancing wasn't necessarily conducted based on the record we have with factors that were appropriately valued. And so, to the extent that the mistakes could bled over, I think that additional source of error and possibility of error could justify relief in the form of a reversal. And I think— One of my problems is this is an extremely thin record, in my view. Her testimony is very thin. His testimony, he had an agreement to assist her in getting relief, which put his credibility in jeopardy, I'll put it that way. But it's a very thin record. I don't know how in the world a tax court could make many findings other than credibility, which is to me is what the court did, basically. She was represented by a well-respected lawyer in New York, by recollection, and they put on the best case they could. His testimony is weak. The CPA's testimony was mostly I don't know, or I can't say. So, I don't know how the tax court can take this thin record and make any definitive findings, other than to say, I believe what you say. To your point about the record, Your Honor, I do think that while it is thin overall, there are important points of corroboration, for instance, between Mr. Carlson, the CPA, and Mr. Sleeth's testimony. And so, that helps buttress some of the points that Dr. Sleeth, for instance, is making, his evasiveness. Mr. Carlson echoed those same complaints, so I think that can give you some confidence in his testimony. I see my time has expired. We respectfully ask that this court reverse. Thank you. Thank you. I understand that you're a law student. We appreciate your working hard on this case to bring the benefit of your argument to the court. And also, thank you to your opposing counsel. You both were very helpful to us today.